JAMES H. MARTIN AND SUTERA MARTIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martin v. Commissioner
Docket No. 4263-87.
United States Tax Court
T.C. Memo 1988-369; 1988 Tax Ct. Memo LEXIS 397; 55 T.C.M. (CCH) 1540; T.C.M. (RIA) 88369; August 11, 1988. James H. Martin, pro se. Joseph T. Ferrick, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge. Respondent, in a January 14, 1987, statutory notice of deficiency determined a deficiency and additions to tax for petitioners' 1983 taxable year, as follows: Income tax deficiency in the amount of $ 47,337; additions to tax -- section 6661 [1] in the amount of $ 11,834, section 6653(a)(1) in the amount of $ 2,367, section 6653(a)(2) in the amount of 50 percent of the interest due on $ 47,337. The sole issue remaining for our consideration is whether petitioners are entitled to a $ 52,800 deduction attributable to a casualty loss or theft. [2]
*399 FINDINGS OF FACT The parties submitted a Stipulation of Facts along with exhibits, all of which are incorporated by this reference. Petitioners James H. and Sutera Martin were husband and wife at all pertinent times and resided in Illinois at the time of the filing of their petition. During the taxable year 1983, petitioner, James H. Martin (hereinafter "petitioner") was a practicing physician. Siegfried E. Aust (Aust) was an acquaintance and friend of petitioner. Aust managed a medical facility which petitioner utilized in his medical practice. During July 1982, Aust told petitioner that he wished to borrow $ 60,000 for about a 60-day period. Aust explained that he was in personal danger if he did not pay the money to a third person. Aust explained that the money was needed in connection with Aust's importing of foreign automobiles. Aust was a foreign national during the period of question. Petitioner did not have $ 60,000 available at the time but, instead, turned over his wife's jewelry which was thought to have a value approximately $ 60,000. The jewelry was sold and produced proceeds of $ 58,000 and petitioner provided an additional $ 2,000 thereby turning over *400 $ 60,000 to Aust. Aust in exchange executed a promissory note to petitioner in the amount of $ 60,000 and dated July 22, 1982. The note was a demand note. On July 27, 1982, petitioner received a second mortgage on Aust's residence. At the time, petitioner was aware of a first mortgage and lien upon said property. The mortgage was recorded in the DuPage County, Illinois, recorder's office on September 24, 1982. During May 1983, petitioner learned that there was a warrant for Aust's arrest on charges of fraud. Initially, petitioner could not find Aust but when he was located and arrested, petitioner put up the bail to have Aust released from jail. Petitioner, took Aust into his home and attempted to assist and rehabilitate him. Based on petitioner's medical background, he determined that Aust was suffering from psychological problems. During August 1983, Aust disappeared and his bail bond was forfeited. Petitioner made numerous efforts to locate Aust, including contacts with Aust's sister, friends, and other individuals who may have known of his whereabouts. All such attempts did not provide Aust's whereabouts. Based upon various factors and representations, petitioner eventually *401 concluded that Aust had left the country. It was at that point during 1983 that petitioner realized and "discovered" that Aust never intended to repay petitioner. Petitioner then sought assistance of his attorney to collect on his note and/or foreclose upon his second mortgage in order to satisfy the alleged loan from petitioner to Aust. In connection with petitioner's attempts to recover his money he discovered that numerous individuals had claims against Aust and were seeking to recover their claims from the only known property which was Aust's residence. As it turned out, however, the first lien upon the residence, including the monthly accruals and interest was sufficient to exhaust the value of Aust's residence. As of the conclusion of the 1983 taxable year there was no likelihood that petitioner would recover the $ 60,000 from Aust. Ultimate Findings
Aust knowingly obtained $ 60,000 from petitioner by false representation including promises of performance which he had no intent to perform. Petitioner discovered this fact during 1983. OPINION Section 165(a) permits the allowance "as a deduction any loss sustained during the taxable year and not compensated *402 for by insurance or otherwise." Section 165(e) provides that "For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers the loss or theft." Petitioner contends that the circumstances of this case constitute a theft by Aust and that such theft was discovered by him during the 1983 taxable year. Conversely, respondent contends that no theft occurred or, if it did, petitioner has not shown that it occurred in 1983. We agree with petitioner. "For tax purposes, whether a theft loss has been sustained depends upon the law of the jurisdiction wherein the particular loss occurred." ; ; . Ill. Ann. Stat. ch. 38, sec. 161- (Smith-Hurd 1977), states that "A person commits theft when he knowingly * * * Obtains by deception control over property of the owner". Ill. Ann. Stat. ch. 38, sec. 15-1 (Smith-Hurd 1977), indicates that property includes money. Ill. Ann. Stat. ch. 38, sec. 15-4 (Smith-Hurd *403 1977), defines deception, as follows: "Create or confirm another's impression which is false and which the offender does not believe to be true" or "Promise performance which the offender does not intend to perform or knows will not be performed." A loan secured by false representations is "theft" within the meaning of the Illinois Revised Statues. . In , in similarly considering whether an Illinois taxpayer was entitled to a Federal casualty deduction based upon theft, we stated -- An essential element of the offense of false pretenses in Illinois is that the accused obtain money with the intent to defraud. . However, the specific intent to defraud need not be proved by direct evidence, but may be proved by facts and circumstances. . Moreover, any misrepresentation of a past fact, knowingly and designedly made to induce another to part with his property, is a false pretense under Illinois law. ; *404 l : .
Additionally, It is not necessary that the alleged thief be convicted or even prosecuted, as long as a 'theft' in fact occurred under the law of the State wherein it was sustained. ; Paul C. F. Vietzke, supra; , and . [.] In the setting of this case Aust obtained petitioners' property and money by deception. Aust gave petitioners the impression that he was engaged in an automobile import business and that he was concerned about his physical safety. The facts in our record reflect that Aust knew or must have known that his representations to petitioners were false. Moreover, Aust's execution of the note and mortgage promised performance which Aust knew would not be performed. The fact that the first lien on the mortgage property, along with interest *405 and other additions, consumed any equity or value in the residence rendered Aust's mortgage to petitioners worthless, during 1983. Further, there were numerous claimants attempting to be satisfied from Aust's property. We think petitioners' circumstances clearly fit within the Illinois Revised Statues defining theft and the cited Illinois case law. Respondent contends that petitioner, at the close of 1983, continued to possess a cause of action against Aust or some capability to collect the money from him. Petitioner bears the burden of proving the theft and the year in which he discovered it. ; Rule 142(a). Petitioner has shown in this case that a theft occurred and that he discovered it during the 1983 taxable year. The fact that petitioner might have continued to search for Aust is of little consequence in circumstances where Aust, a foreign national, had jumped bail and was in flight from prosecution leaving fully encumbered assets for numerous potential creditors. Although there may have been uncertainty about whether Aust had in fact left the country, Aust deceived numerous people and fled the jurisdiction. It *406 would have been superfluous for petitioner to make additional efforts or pay additional legal fees or costs in seeking Aust's whereabouts. . To reflect the foregoing, and account for the agreement of the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue and all rule references are to this Court's Rules of Practice and Procedure. ↩
2. The parties' Stipulation of Facts includes agreements with respect to all issues set forth in the statutory notice with the exception of the one for consideration and the additions to tax under sec. 6653 (a)(1) and (2) and sec. 6661. Petitioners bear the burden of proof with respect to these additions to tax, and no evidence or argument was offered during trial, or otherwise, on behalf of petitioners concerning the additions to tax. With respect to the additions under sec. 6653(a), respondent determined that they were applicable with respect to the entire amount of the underpayment. Accordingly, to the extent that we redetermine any underpayment of tax, said additions would be applicable. With respect to the sec. 6661 addition, however, that section's applicability may depend upon whether the threshold requirements are met following a determination of the remaining issue and should be addressed in the parties' Rule 155 computation. ↩